The case for argument is 19-2060, Lee v. United States. Ms. Moore-Lennart, whenever you're ready. Thank you, Your Honor. Good morning, Your Honors. I am Mary Alice Moore-Lennart, and I represent Dr. Sin Hang Lee. In the amended complaint, which is at Appendix A38, we believe Dr. Lee has plausibly alleged that there was an offer, acceptance, and actual authority by the CDC. This is obviously the basis of the Court of Federal Claims decision and our focus today. Simply put, what was the offer? The offer was extended by the CDC to Dr. Lee to enter into a nationwide research project for the purpose of finding a practical and reliable test for the diagnosis of early Lyme disease. The specific details included using Dr. Lee's PCR DNA sequencing test for Lyme disease as the comparative test against which other tests from selected sources would be measured. This is what is meant by the term gold standard as used in the amended complaint at Paragraph 35. I'm sorry. Let me interrupt you. What do you point to in your complaint that says that you're claiming he breached an agreement to approve his technology as the gold standard for Lyme disease, transfer it to hospital laboratories, or pursue a field trial with it for further validation? You're seeking $57 million in damages for that. Where is the alleged offer to approve his technology as the gold standard for Lyme disease diagnosis? Your Honor, I would invite you to Paragraph 16 of the amended complaint, which in essence sets forth the offer that was extended to Dr. Lee. The offer was that Dr. Lee would engage in a research study with the CDC that would be conducted on a nationwide basis. As part of the study, Dr. Lee's test would be utilized as the gold standard. In other words, other tests which would be solicited by the CDC would be conducted. The testing technology and the results of those tests would be measured against Dr. Lee's PCR DNA sequencing technology test and the accuracy of his results. That was the offer. As part of that offer, it was contemplated by the parties that Dr. Lee's test would be taken through a couple of rounds of reliability testing. Depending on if the results were favorable, the parties would then collaborate and draft a protocol. The protocol, if you will, would be used as the manual, so to speak, for the implementation. I'm hearing your words, but I guess I'm focusing on Paragraph 16 of the complaint. It's at 841 of the appendix, right? That's correct. I'm comparing that to the public conference statement, which is one of the things you say constituted the offer. I'm not seeing how one maps on to the other. A statement made at a conference that the entire conference maps on to what your allegation is in Paragraph 16. Do you understand my problem? I do, Your Honor, and I respectfully would like to clarify what appears to be some confusion about the import of the public statement that you're referring to in Paragraph 13. This statement in and of itself does not represent the CDC contract offer for the research project. Rather, this statement led to a dialogue between the parties, an expression of interest. It was an invitation, if you will. There was an expression of interest. There were discussions between Dr. Lee and the CDC that led up to the formal offer by the CDC for Dr. Lee to be the principal researcher assisting the CDC to conduct the research project, which is described not only in Paragraph 16 but also in the protocol, the study protocol, which is referred to in Paragraph 40 at Appendix 847 and can be found in Attachments 16 and 17 to the amended complaint. The goal of the study, again, was to identify the most reliable test for early detection of Lyme disease so then consumers could be early diagnosed and then treated properly. Counsel, this is Judge Redo. So you're saying that there was an agreement that Dr. Lee would undertake the study. And I looked in the record and I can't find it. I just couldn't find it. But who paid Dr. Lee's cost up to this point? Dr. Lee spent a lot of money. There's no agreement. There's no inference that the CDC would be responsible for any of the costs related to the study. I think the inference was that once the study proceeded, there might be a grant that was issued to cover Dr. Lee's costs, and I believe there is an allegation in the complaint that addresses that, that there was a representation made to him that in Paragraph 21 by Dr. Schreifer that Dr. Lee would likely receive a grant as the work went forward. But I'd like to just take you back, if I may, to the essence of the offer. Counsel, this is Judge Stoll. I'm sorry to interrupt you. I know you can get back to that in a minute. But I'd just like you to answer one quick question, which is you had referred us to appendix page 847 and Paragraph 40 and to attachments 16 and 17 to the amended complaint. I don't see attachments 16 and 17 in the appendix before me. Am I incorrect to understand that those have not been provided to the court? Well, they are not in the court appendix before you, but they are in the master appendix to the amended complaint at attachments 17 and 18 pages 971 to 1017, and they are a part of the court record that is before you, Your Honor. Did you cite them or rely on them at all in your arguments on appeal? Yes, we did. May I proceed? Yes. Well, the last thing you said was he said he would likely get the grant. So your view is that he wasn't told he would get the grant, but he was told that he would likely get the grant? That is correct. But I think the point of this case is that the contract wasn't about seeking a grant or securing the grant. The contract was an implied-in-fact contract between the CDC and Dr. Lee to conduct this national study. The CDC would utilize Dr. Lee's test. There would be a protocol that was designed around utilizing that test and then identifying facilities and testing laboratories which would produce specimens and test the specimens, the results of which would be directly sent back to the CDC. That's all set out in those protocols that are at the master appendix of attachments 17 and 18. Our point with regard to the offer is that the court did not seem to have considered in its analysis the impact of paragraphs 16, 17, and 18. We believe that those paragraphs, along with paragraph 40, are an integral part of the analysis that leads up to whether or not there was a plausible offer as alleged by Dr. Lee, and we believe that there was such a plausible offer. I'd like to move on, since I'm running out of time, to acceptance and direct your attention to paragraph 15, wherein it is alleged that Dr. Lee accepted the plan. That needs to be taken in the context of paragraphs 13 and 14. The plan that was accepted is described in paragraph 16, and the CDC understood that Dr. Lee had accepted the plan for the research project when Dr. Schreifer commenced the research project by supplying the material samples to Dr. Lee under material agreement number one. Finally, with regard to actual authority, we believe Dr. Lee has plausibly alleged an implied-in-fact contract. I would invite you to review paragraphs 10, 11, 12, and 14. However, the point here that I'd like to make is that the CDC's challenge on this issue and the court's decision seem to relate to whether there's been sufficient evidence to support the allegation, and that's not- You can finish your sentence. Go ahead. Thank you. That isn't what the intent of the pleading stage at this point is all about. It should be about whether or not Dr. Lee has sufficiently alleged actual authority, and I believe I've said it forth in my brief more than adequately in terms of the aggregate allegations as well as the MTA number one and MTA number two, wherein Dr. Bell has been identified as the authorized official for the provider, and both MTAs refer to the research project and not just a limited transfer of materials. I think that more than sufficiently meets the standard and raises it from possible to plausible, and I would ask that you be permitted to pursue any challenges in the discovery phase. Thank you. While we serve the remainder of your time for rebuttal, let's hear from the other side. Yes, I do. Good morning, Your Honor. Can everyone hear me? Yes. May it please the Court. The elements of contract formation are well established and beyond dispute. You must have an offer, acceptance, a mutual intent to enter into a contract, and in the case for government contracts, actual authority vested with the government agent doing the contracting to bind the government to that contract. Each of these elements is mandatory. If anyone is missing, then there can be no valid contract that is formed, no breach of contract, and the case is properly dismissed. In this case, the Court of Federal Claims carefully reviewed Dr. Lee's complaint. Okay, so let's start. Time is limited, so why don't we start with offer, and the other side seems to focus largely, if not exclusively, on paragraph 16 of the complaint. So why don't you turn to paragraph 16 and tell us why that's not sufficient? Your Honor, for several reasons. First of all, most notably, even if we accept on its face the agreements that Dr. Lee alleges in paragraph 16, those agreements do not track the breaches that he alleges. The agreements that are referenced in paragraph 16 have all been fully performed. The CDC undisputably provided samples to Dr. Lee. Dr. Lee undisputably tested those samples and prepared a protocol for continued testing of those samples. There is no agreement even alleged on the face of paragraph 16 that the CDC was then going to do anything subsequent with Dr. Lee's technology. Furthermore, Your Honor. Maybe the last two sentences. So the last two sentences, which I think the Court of Claims may have said was the ultimate goal of the contract, blah, blah, blah, blah, blah. Certainly, Your Honor. And that is a legal conclusion. Dr. Lee certainly pleads that he believed he had a contract here. But under Iqbal and Twombly, that sort of legal conclusion. Apologies. It appears that Chief Judge Prost has dropped from the call. I'm going to stop the recording and we'll connect Chief Judge Prost back. My apologies. I was dropped. Please continue. This is Sharon. Your Honor. I believe we were discussing the concluding sentence of paragraph 16 of Dr. Lee's complaint where he alleges that the ultimate goal of the contract was to establish this test. And, Your Honor, there's sort of several problems with that allegation. Most notably, that is a legal conclusion. And that is certainly Dr. Lee's conclusion in this case. But under Iqbal and Twombly, it is not sufficient to merely plead the elements of your case. You have to plead facts that would plausibly suggest the existence of such a contract. And Dr. Lee has failed to do that here. Well, counsel, let me ask you this question. This is Judge Reyna. And this goes to what you're saying about the failure to allege. When we're being asked to see if there's any offer by the CDC to inform the implied, in fact, contract, and the CDC has got to be shown to have unambiguously done this, why is it that Dr. Lee's work, and it seems like it's quite extensive work in developing the testing protocols and his communications with the CDC personnel as to what he was doing, that kind of indicates to me that he's taking all this action on the promise that there's going to be a contract on the line. Well, Your Honor, I respectfully disagree. I think that Dr. Lee's interactions with the CDC in this case are of the nature that any researcher would have with the CDC if their work overlaps with the CDC's field of expertise. The CDC is a public health institution, and one of the things that they do is that they interact with members of the scientific community. They provide materials. They provide the benefit of their expertise. And that was the nature of Dr. Lee's interactions with the CDC. He is himself personally interested clearly in Lyme disease diagnosis, and the CDC is interested in encouraging that kind of work to develop. And so they have, for example, prepared this repository that they made available to Dr. Lee and anyone else who was a researcher in this field, and they sort of gave him the benefit of their expertise in terms of how he was developing this research. But that does not reach the level of an unambiguous offer to endorse his technology or to work with Dr. Lee on his technology. And in that respect, you know, the MTAs that were signed are telling, Your Honor, in that the whole purpose of a material transfer agreement at the CDC is to provide materials and to provide things that would enable researchers to further their own research pursuits, but where the CDC is not personally getting involved in that research. And if the CDC had wanted to get involved with Dr. Lee's research and had wanted to actively participate or collaborate or develop that further, there are other ways that the CDC has established to do that. They have research collaborations. But the CDC didn't reject his samples. The CDC was accepting his work. So, Your Honor, just to clarify, the CDC provided Dr. Lee with samples. That was the intention behind the repository that they created. And then Dr. Lee sent the results of his further testing to the CDC, and they gave him some insights on those. But they never pursued or encouraged or said, yes, we want you to do more work for us with these samples. This was Dr. Lee's research project. It was research that Dr. Lee wanted to pursue, and it was his interest, and the CDC was assisting him in his scientific development. But there are no factual allegations on the face of Dr. Lee's complaint to indicate that the CDC wanted to get involved in that research or that the CDC intended to contractually commit to promoting or enforcing that technology. And in that respect, Your Honor, it is telling that the acceptance that Ms. Lenhard mentioned occurs before the offer that she has indicated exists here. And that temporally just doesn't make sense for a valid contract. The acceptance that she identifies at paragraph 15, the only thing that happened before that was the public webinar where the CDC presented to the scientific community at large and that she now concedes is not sufficient for an offer. Moreover, Your Honor, the only individuals that Dr. Lee interacted with at the CDC were scientists. And that makes sense and is consistent with the fact that this was sort of a scientific exchange of ideas, but it is not consistent and is not indicative of the intent to form a contract. And Dr. Lee has not alleged that any of the individuals that he actually interacted with, which was Dr. Streicher and Dr. Mullins, would have actual authority to find the CDC and to enter into the type of endorsement contract that he claims has been breached here. Frankly, he fails to elect even that Dr. Bell had that authority. Certainly, we don't dispute in the context of this motion to dismiss that she had authority to sign the MTAs. But Dr. Lee agrees that the MTAs are a separate concern from the sort of broader endorsement contract that he claims was breached here. And there are no factual allegations that would plausibly suggest that Dr. Bell would have had that broader authority. But more fundamentally, even if she did have that authority, Dr. Bell never interacted with Dr. Lee. And he conceded that below and doesn't dispute that on appeal. And therefore, whatever authority she may have had, it could not support a contract that Dr. Lee alleges here. Fundamentally, Your Honor, the factual allegations that are in Dr. Lee's complaint, both his original complaint and the Court of Federal Claims gave him an opportunity to amend his complaint and to address some of the concerns that the court had identified with his original complaint. The factual allegations contained therein are simply not consistent with the intention of the CDC to enter into some kind of contract with Dr. Lee to endorse his technology. It's clear that the CDC interacted with Dr. Lee on sort of a scientific foundation. Conferences, discussions, the exchange of materials and ideas, these things are the foundation and the bedrock of scientific advancement. But they are not sufficient for nor are they indicative of contract formation. And so the scientists at the CDC that engaged with Dr. Lee on that scientific foundation could not and did not form a contractual relationship to endorse his technology. And so the Court of Federal Claims very carefully reviewed all of the allegations in Dr. Lee's complaint, including paragraph 16. In fact, it's specifically mentioned in the opinion. And so there is no question that the Court of Federal Claims was aware of those allegations specifically. Correctly found that Dr. Lee was missing all of the necessary elements of contract formation here. And if this Court agrees with the Court of Federal Claims on any one of them, that is sufficient to affirm firm judgment here. And so the Court should affirm. Okay. Thank you. Let's hear Rebuttal from the other side. Thank you very much. I think much of what counsel endeavored to bring to the Court's attention really addresses matters reserved for trial or discovery. The issue here isn't whether Dr. Lee will win this case. It's whether he can present evidence. And that goes to the sufficiency of the allegations. I would invite you back to paragraph 16, but also paragraph 40, which describes the protocol. And with regard to the protocol in the Master Appendix 971, counsel says Dr. Lee didn't sufficiently allege an offer to conduct the national study as I've described earlier. Well, it specifically says at Appendix 977, the goal of the primary objective is to evaluate the accuracy of two-tier seriological testing, DNA sequencing of nested PCR products, microscopy, and culture in diagnosing acute Lyme disease less than 30 days. Secondly, the goal of the project is to find practical and reliable tester tests for the diagnosis of early Lyme disease and related Borreliosis, which can be utilized in disease endemic areas for timely diagnosis of early Borrelial infections for appropriate and timely patient management. The investigators and other study participants are identified, including the participatory role of the CDC. And under the section beginning at page 978 through page 979, the CDC's active participatory role is mentioned at least 10 times. So I do think we have sufficiently alleged and met the standards of Twombly, Was Dr. Lee at any point in this time, was he expecting to get paid by the CDC? Not for this research project, Your Honor. As may, and that hasn't been alleged in this complaint. The allegations were damages which did not serve as a basis for the decision underlying here. But the allegations of damages are contained toward the end of the complaint, and I would invite you to look at it. I'm looking at paragraph 16, which you cited a lot. And there's a lot of ifs in there and woulds, and it looks like it's, you know, the attempt is to show that there's at least a shadow of contractual terms that were arrived at. But I don't see anything in there about any type of consideration or what Dr. Lee was expecting from this. Okay. Again, Your Honor, you know, I think the goal and the offer was to establish the molecular test for the accurate diagnosis of the Lyme disease at an early stage. And that's, again, at the last sentence of paragraph 16. And then when you go to paragraph 40 and you see the description of the protocol aspect of it, I think that the purpose was for the CDC, through this research project, which was its research project, not Dr. Lee's research project, to come up with the most reliable test for early detection of Lyme disease because the current and prevailing testing was not reliable and the results were not something that the doctors and the medical community could rely upon. Okay. I think one final thought, because I think the time has expired, unless Judge Rainer has another question to follow up. No, that's fine. Would you like me to proceed? I just want to say, how would Dr. Lee benefit in this? And what was the consideration? Dr. Lee had developed his technology over 20 years. I believe that's alleged in the complaint. And this was a very valuable technology and test that had a degree of reliability. Counselor, you answered my question. I appreciate it. Thank you. Thank you. Thank you. We thank both sides. Thank you.